**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA**  :  **Criminal Number: 12-cr-00106-NS-1**

v.  :

**FRIDAY JAMES**  :

<u>**GOVERNMENT TRIAL BRIEF**</u>

## I.  <u>INTRODUCTION</u>

The annual preparation and filing of a federal income tax return is a task dreaded ritual for some, but all not, Americans.[1]  For wealthy individuals with large sums of passive income and capital gain, the tax filer generally attempts to reduce his or her tax liability to the maximum extent possible either by sheltering a portion of the income, or causing the income to be taxed at favorable tax rate.  For regular wage earners, who work for employers and who do not have significant business deductions, the filer's general desire is to receive a tax refund of the taxes withheld from his or her salary or, at a minimum to "break-even."

Some individuals are sophisticated enough to prepare their own returns either manually or through the use of commercial software.  Other individuals seek the assistance of a tax preparer. The preparer may, or may not, be a certified public accountant. The preparer, on the

---

[1] Unfortunately, some individuals view the tax season as the time of year to defraud the government through the filing of federal income tax returns, through *electronic transmission,* because the falsity of a return may not be discovered until such time as the return is physically audited which usually occurs after a refund check has been issued, or deposited, into the filer's bank account.   By the time the IRS discovers that a return, which generated a refund was false, the tax refund check deposited into the filer account may be closed and the filer may has disappeared.  Anecdotal evidence has shown that it is more likely that a fraudulent tax return will escape detection when it electronically filed, as opposed to a paper return, which might be immediately audited upon receipt by the IRS.  This is not to say that a fraudulent electronically filed return will not be discovered.  The issue is one of a "time-lag" between the time of the filing and the discovery of the fraud.

other hand, might be an individual such as Defendant Friday James who learned how to prepare

tax returns as a result, for example, of working for H&R Block Corporation.

   In the case before the Court, the evidence will show that  during tax years 2008

and 2009, Defendant Friday James, a former employee of both H&R Block and Liberty Tax

Service, willfully aided and assisted his clients in preparing materially false federal income tax

returns.

   The defendant's tax fraud scheme was initially discovered by a computer program

developed by the IRS which identifies "unusual patterns"  in the universe of tax returns prepared

by a tax return preparer.  Such a pattern might be, for example, the amount of itemized

deductions taken on a filer's tax return is high in relationship to the filer's adjusted gross income.

 Another "unusual pattern" in a universe of returns prepared by the same tax preparer which may

cause the IRS to closely review the returns will be "un-reimbursed business expenses" for

employees who are wage earners (i.e., working for an employer) as opposed to being self-

employed.   Tax returns prepared by Defendant James were selected for review and for

interviews with the filers of the returns based on these facts.

   The interviews revealed that many of the taxpayers were not eligible for some of

the deductions listed on the returns.  Indeed, the bulk of the filers were not even aware of the

deductions that Defendant James had taken on their returns.  The filers were principally

interested in the amount of refund, if any, that they were slated to receive.  The filers will testify

that the reason why they chose the defendant to prepare their tax returns was because of their

belief that the defendant was an expert in preparing returns and because the defendant, like the

bulk of the filers, were West African immigrants.[2]

Government counsel does not believe that the defendant will deny that he prepared and filed the 27 returns charged in the indictment.  As such, the defendant clearly aided and assisted the filers in preparing the returns.  The critical trial issues are: (1) whether the tax returns were materially false; and (2) whether the defendant knew that the returns were false at the time that he prepared the returns and electronically filed the returns with the IRS.

## II.    <u>STATUTE</u>

Title 26, United States Code, Section 7206(2) is the statute that the defendant stands accused of violating.  The language of the statute provides that:

Any person who –

(1) . . .

(2)    **Aid or assistance**. - Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim or other document, which is fraudulent or is false as to any material matter, *whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim or document . . .;*

shall be guilty of a felony and, upon conviction thereof, shall be fine not more than [$250,000][3] or imprisoned

---

[2]  The defendant's reputation as a preparer who could generate tax refunds grew from 2008 to 2009.  In 2008, according to IRS data, the defendant prepared and filed approximately 726 returns.  For tax year 2009, according to IRS data, the defendant prepared and filed approximately 1,268 returns – which represents an increased of over <u>500 clients</u> during the span of one year.  This increase may have been caused, in part, by the fact that for tax year 2008, approximately 99% of the returns prepared and filed by the defendant claimed a tax refund.

[3]  Under 18 U.S.C. § 3571, the maximum fine for violation so f26 U.S.C. § 7206(2) is at least $250,000 for individuals and $500,000 for corporations.  Alternatively, if any person derives pecuniary gain from the offense, or if the offense results in an pecuniary loss to a person other than the defendant, the defendant may be fined not more

not more than 3 years, or both, together with the cost
of prosecution.

### III.    STATUTORY ELEMENTS

To establish a violation of Section 7206(2), the government must prove, with

competent evidence, the following elements beyond a reasonable doubt:

> 1.    The defendant aided or assisted in, procured,
> counseled, or advised the preparation or
> presentation of a document in connection with
> a matter arising under the internal revenue laws;
>
> 2.    The document was false as to a material matter;
>
> 3.    The act of the defendant was willful.

*United States v. Gambone*, 314 F.3d 163, 174 (3d Cir. 2003); *United States v. La Haye*, 548 F.2d

474,475 (3d Cir. 1977).

The purpose of Section 7206(2) "is to make it a crime for one to knowingly assist

another in preparation and presentation of a false and fraudulent income tax return."   *United*

*States v. Jackson*, 452 F.2d 144, 147 (7th Cir. 1971).  Section 7206(2) and its predecessor statutes

have been directed against fraudulent tax return preparers since as early as 1939.  In *United*

*States v. Kelley,* 105 F.2d 912 (2d Cir. 1939), Judge Learned Hand described the purpose of the

statutory predecessor of Section 7206(2) as follows:

> The purpose was very plainly to reach the advisers
> of tax payers who got up their returns, and who might
> wish to keep down the taxes because of the credit they
> would get with their principals, who might be altogether
> innocent.

*Kelley*, 105 F.2d at 917.  Section 7206(2) "has a broad sweep, making all forms of willful

than the greater of twice the gross gain or twice the gross amount.

4

assistance in preparing a false return an offense." *United States v. Hook*, 848 F.2d 785, 791 (7th Cir. 1988) (citation omitted); *accord United States v. Coveney*, 995 F.2d 578, 588 (5th Cir. 1993). Courts have held that <u>anyone</u> who causes a false return to be filed or furnishes information which leads to the filing of a false return can be guilty of violating Section 7206(2). *See, e.g., United States v. Clark*, 139 F.3d 485, 489-90 (5th Cir. 1998). The question is whether the defendant consciously did something that led to the filing of the false return. "[A]ffirmative participation need not rise to the level of actual counseling, . . . as long as it 'at least encourages' the preparation or presentation of a false return." *Gambone*, 314 F.3d at 173-74.

Section 7206(2) is not limited to the preparation of false tax returns. The statute also prohibits aiding or assisting in, procuring, counseling, or advising the preparation or presentation of a <u>false</u> <u>document</u>. Thus, the fact that a defendant does not actually sign or file the document is not material. *Coveney*, 995 F.2d at 578 (observing that "[a] person need not actually sign or prepare a tax return to aid in its preparation"); *United States v. Crum*, 529 F.2d 1380, 1382 n.4 (9th Cir. 1976 (approving instruction in case arising under Section 7306(2) that "the fact that the defendants did not sign the income tax returns in question is not material").

It is not defense to a Section 720(2) prosecution that the taxpayer who submitted the return was not charged, even when the taxpayer was aware of the falsity of the return, went along with the scheme, and could have been charged with a violation. Any criminal mental state (or lack thereof) on the part of the taxpayer is not relevant to the propriety of a defendant's prosecution under Section7206(2). *United States v. Jennings*, 51 Fed. Appx. 98, 99-100 (4th Cir. 2002) (*per curiam*) (citations omitted). Thus, both a defendant supplying false information to an entirely innocent taxpayer -- and a defendant supply false information to a taxpayer who

5

willingly accepts and uses the false information -- are guilty of violating Section 7206(2).  *Baker v. United States*, 401 F.2d 958, 987-88 (D.C. Cir 1968) (affirming convictions of defendants charged with conspiracy and violation of Section 7606(2), where defendants agreed to report fees earned by one defendant on the other defendant's tax return, which the second defendant filed, to conceal the first defendant's receipt of additional taxable income).

A tax deficiency is not prerequisite to a conviction under Section 7206(2).  *See Hull v. United States*, 324 F.2d 817, 823 (5th Cir. 1963) (rejecting the defense argument that there was insufficient evidence that the return was false as to a material matter because the indictment did not state the amount by which income had been under-reported).  Government counsel, however, may elicit testimony regarding the criminal (not civil) tax deficiency caused by a return preparer's fraudulent preparation of tax returns since such evidence is relevant to the "materiality" element of Section 7206(2).

## IV.   THEORY OF PROSECUTION

The government's theory of prosecution is that the defendant willfully aided and assisted tax filers, most of whom were wage earners, in filing false tax returns for the purpose of insuring that the filers received tax refunds in an amount to which they were not entitled.  The evidence will show that the  defendant committed these crimes by inflating or, in some cases, created bogus deductions on the returns of the filer and claiming entitled to tax credits to which the filers were not entitled to receive.   By combining bogus tax deductions with unwarranted tax credits, the defendant created a fraud scheme whereby he insured that the amount of the refund claimed by the filers was more than the filers were entitled to receive.  His conduct was criminal because it violated Section 7206(2).

6

The government anticipates that some filers will testify that the only document that they gave the defendant to prepare their tax returns was their IRS Form W-2.  Even though the defendant did not have, or request, documents from his clients to support expense deductions, he still included the deductions on the returns with knowledge, based on his training and experience, that he should not do so.  As such, the manner in which the defendant prepared the returns charged in the indictment was not the result of accidents or mistakes.  His conduct was willfull, that is, the defendant violated a known legal duty not to prepare false returns.

In addition to bogus expense deduction, the defendant also claimed the First Time Homebuyer's Credit ("FTHBC")[4] on the 2008 tax returns for many of the filers when he knew that the filers were not entitled to receive this credit because the filers had not purchased a house.

The government anticipates that witness credibility will be a major issue in the case.  It is likely that the filers will be cross-examined regarding their knowledge of the contents of their returns for the purpose of showing that the filers did not care about the falsity of the return so long as they received a refund.[5]   Even if true, this fact does not exculpate the defendant

---

[4]  To help stimulate the economy and the market for home sales, in 2008 Congress enacted a refundable tax credit for first-time homebuyers.   IRC §36, *First-time Homebuyer Credit*, as originally enacted by the Housing and Economic Recovery Act of 2008 (P.L. 110-289, July 30, 2008),  provided eligible individuals with a maximum credit of $7,500 for a principal residence purchased after April 8, 2008 and before July 1, 2009.   The buyer could not have owned a principal residence during the three-year period prior to the purchase date of the credit-qualifying home and had to be within a specified adjusted gross income (AGI) limit.  This credit, as originally formulated, was really an interest-free loan because it had to be paid back at a rate of $500 per year starting in the second year following the year the home was purchased.  Thus, a $7,500 credit claimed for a home purchased in 2008 had to repaid to the government through reporting on Form 1040 at $500 per year for 2010 through 2024.   If the home is disposed of within 15 years of purchase or ceases to be a principal residence, repayment is accelerated.  With the American Recovery and Reinvestment Act (ARRA) of 2009 (P.L. 111-5, February 17, 2009), the credit  was extended for home purchases made by November 30, 2009. The 2009 Act also increased the credit to a maximum of $8,000 and removed the repayment requirement for homes purchased in 2009, provided they are held at least 36 months.

[5]  One of the filers for whom the defendant prepared a bogus return was an undercover IRS agent.  The agent was wearing a recording device when she met with the defendant.  A copy of the tape recording will likely be offered into evidence. A copy of the tape and the transcript has been provided to defense counsel.   Government

and cross-examining of the witnesses in this regard should be limited on the ground of relevance. Government witnesses are likely to testify that the defendant never discussed the contents of the information that he had included on their returns prior to filing the return and, in many cases, did not give the filers a copy of the returns.  Because the returns were electronically filed by the defendant, the filers did not have to sign the actual return before it was filed which prevent them from reviewing the contents of the returns prior to filing.

## V.    DISCUSSION

### 1.    Aiding and Assisting in the Preparation and Presentation of the Returns

The first element that the government must prove is that Defendant Friday James knowingly assisted other individuals in preparing and presenting to the IRS federal income tax returns that were materially false.  *Nye & Nissen v. United States*, 336 U.S. 613, 618 (1949) ([i]n order to aid and abet another to commit a crime it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed .  *See also United States v. Jackson*, 452 F.2d 114, 147 (7th Cir. 1971).

Whether the filers knew that the returns were false at the time that the defendant filed

---

counsel will be filing a *Starks* motion within the next several days.  Government counsel, however, will not be filing a Rule 404(b) motion seeking to offer into evidence other false returns that the defendant prepared and filed.  Those returns, however, may be referenced in the government sentencing memorandum -- in the event of a conviction -- as relevant conduct which the court, and U.S. Probation, can consider in determining the defendant's guideline range. For example, for tax year 2008, the defendant prepared approximately 726 tax returns.  For tax year 2009, the defendant prepared approximately 1,268 returns.   Approximately 99% of the returns prepared by the defendant for tax year 2008 claimed refunds, a statistical result that far exceeds the national average for return preparer based on historical data.   Testimony regarding these facts should be admitted. *See Old Chief v. United States*, 519 U.S. 172, 187 (1997) (the prosecution is entitled to prove its case by evidence of its own choice; a criminal defendant may not stipulate or admit his way out of full evidentiary force of case as the government chooses to present it).

the returns is not a relevant factor in determining whether the defendant's conduct violated

Section 7206(2).    The statutory language of Section 7206(2) makes clear that it does not matter

whether a defendant's client was unaware of the materially false items placed on his return or

was willing participation.  *See United States v. Nealy*, 729 F.2d 916, 963.  Government counsel

anticipates, perhaps erroneously, that the defendant may, through cross examination, will attack

the credibility of the individuals for whom he prepared the false returns.  This attack might arise

through questions posed to the filers which suggest that they  the filers knew the returns were

false at the time that they were prepared; yet, the filers "went along with the program" because of

their desire to receive a large refund.  Alternatively, the defense might argue that the filers gave

him documents to support the deductions and credits that were included on the returns.

      Regardless of the argument that the defendant might make, the prevailing legal

principles suggests that a defendant cannot raise a valid defense to a  Section 7206(2) prosecution

even where the filer, for whom the defendant prepared a false return, was: (a) not charged; (b)

knew the return was false; (c) when along with the scheme; or (d) could have been charged.  *See*

*United States v. Jennings*, 51 Fed. Appx. 98, 9-100 (4th Cir 2002) (per curiam) (citations omitted)

(rejecting a defense argument that a taxpayer-witnesses committed perjury either when they sign

the jurat indicating that they had examined their returns, or when they testified under oath that

they had not examined their return before signing them).

      In *Baker v. United States*, 401 F.2d 958, 987-88 (D.C. Cir. 1968), the convictions

of defendants were affirmed on appeal where the defendants had been charged with conspiracy

and violations of Section 7206(2) where defendants agreed to report fees earned by one

defendant on the other defendant's tax return which the second defendant filed, to conceal the

first defendant's receipt of additional taxable income.  *See also United States v. Lefkowitz*, 125 F.3d 608, 618-19 (8th Cir. 1997) (affirming Section 7206(2) conviction of corporation president who gave an accountant false information that the president knew would result in the filing of a false return); *United States v. Marshall*, 92 F.3d 758, 760 (8th Cir. 1996) (noting that the taxpayers were unaware of inaccuracies while rejecting sufficient challenge to Section7206(2) conviction; *United States v. Motley*, 940 F.2d 1079, 1084 (7th Cir. 1991) (in rejecting claim that evidence on Section 7206(2) counts was insufficient because defendant neither signed any of the returns or. . . personally mailed any of the returns himself, the Court of Appeals noted that Section 7206(2) specifically permitted conviction of a defendant "whether or not the falsity or fraud was with the knowledge or consent of the innocent person); and *United States v. Hook*, 848 F.2d 785, 791 (7th Cir. 1998) (observing that defendant willfully caused tax preparer to file a false estaet tax return and therefore violated Section 7206(2) regardless of whether the tax prepare knew of the falsity or fraud).

One unique aspect of this case is that the bulk of the defendant's clients were Western African immigrants.  This fact might be attributable to, in part, because the defendant is also a West African native.   The defendant entered the United States in October 2000.  In September 2009, the defendant became a permanent resident alien.  Unlike many of his clients, the defendant appears to have earned a Bachelor of Science degree in Electrical Engineering while living in Liberia, West Africa.  He has also attended Cheney University since entering the United States but has not completed a degree program at Cheney.

Cultural ties and the defendant's education background appears to be the reason why many of his fellow countrymen hired the defendant to prepare their tax returns.  As such, he

10

aided and assisted in both preparing and presenting the returns charged in the indictment to the IRS.

2. <u>The Returns Were Fraudulent and False as to a Material Matter</u>

Under the second element of Section 7206(2), the government must prove that each tax return at issue was false regarding a material matter. In the Third Circuit, an item is materially false if it is essential to an accurate determination of [the taxpayer]'s tax liability." Third Circuit Model Criminal Jury Instruction, False Income Tax Return - Return was Materially False, 6.26.7206(3) (2006). The First Circuit employs a similar definition: "[A] 'material' matter is one that affects or influences the IRS in carrying out the functions committed to it by law or 'one that is likely to affect the calculation of tax due and payable.'" *United States v. Griffin*, 524 F.3d 71, 76 (1ˢᵗ Cir. 2008 (emphasis in original) (citations omitted). "A false statement may be material even if it was only likely to influence the calculation of tax due and payable." *Id*. at 76-77. It is well settled that the issue of materiality is a question for the jury. *See Neder v. United States*, 527 U.S. 1, 8 (1999); *United States v. Gaudin*, 515 U.S. 506, 522-23 (1994).

Furthermore, proof of one materially false item on a tax return is sufficient, Here, the indictment that the returns prepared by Defendant Friday were materially false because he inflated un-reimbursed employee business expenses for the individuals who returns he prepared that are charged in the indictment. In addition, some of returns that Defendant Friday prepared were materially false because he claimed that the filers were entitled to the First Time Home Buyer's Credit which, in reality, the filers were not entitled to receive the credit. Defendant Friday's purpose in preparing the false returns was to obtain a large refund for his clients many of who were force to repay the unwarranted refunds, including interest and penalties. In short, the

11

defendant also victimized his clients as well.

Regarding the issue of materiality, the government does not have to prove that more than one item on a return was false where more than one items was charged as being materially false.  Proof of any one material falsity will support conviction.  *See United States v. Broscoe*, 65 F.3d 576, 588 (7th Cir. 1995); *United States v. Null*, 415 F.2d 1178, 1181 (4th Cir. 1969).  But the jury must unanimously agree as to at least one material falsity in order to convict.  *See United States v. Ryan*, 828 F.2d 1019, 1020 (3d Cir. 1987) (discussing unanimity requirement in conviction for making false statement to federally insured bank under 18 U.S.C. 1014); Third Circuit Model Criminal Jury Instructions, False Incoem Tax Return - Unanimity as to Falsity, 6.26.7206-5 (2006).

Finally, the existence of a tax deficiency or loss to the government is not an element of Section 7206(2).  *Accord United States v. Olgin*, 745 F. 263, 272 (3d Cir. 1984); Third Circuit Model Criminal Jury Instructions, False Income Tax Return - Return was Materially false, 6.26.720603 (2006).

### 3.   Defendant James Acted Willfully

For the purposes of Section 7206(2), willfulness is defined as a voluntary, intentional violation of a known legal duty.  *Cheek v. United States*, 498 U.S. 192, 200 (1991); *United States v. Pomponio*, 429 U.S. 10, 12 (1976).  An act is done willfully it is done intentionally, as opposed to negligently, inadvertently, or by mistake.  *United States v. Sassak*, 881 F.2d 276, 279-80 (6th Cir. 1989).  Moreover, in this context, willfulness is a subjective standard that, absent a confession or admission, can be interred from the defendant's background or conduct.  *Cheek*, 498 U.S. 192; *United States v. Ashfield*, 735 F.2d 101, 105-07 (3d Cir. 1084).

Willfulness is most effectively viewed in two parts: (1) that a defendant knew of his obligations under the tax laws, and (2) despite the fact of having knowledge of his or her duty under the law, the defendant intentionally violated the law.  Good motive alone is not a defense to a finding of willfulness where the act done or omitted is a crime; motive is irrelevant except as it bears on intent.  *See Pomponio*, 429 U.S.  at 11-12.  *Accord United States v. Dillon*, 566 F.2d 702, 704 (10th Cir. 1977).

Various facts are relevant to proving willfulness.  For example, a person's wilful intent may be shown by the surrounding facts and circumstances.  These include an individual's educational background, training and experience in preparing tax returns.  *See, e g., United States v. Rischard*, 471 F.2d 105, 108 (8th Cir. 1973) (may consider general educational background and experience in determining willfulness.

Here, several facts of indicative of Defendant Friday's willfulness.  Prior to opening his own tax preparation service, the defendant worked for H&R Block Tax Services and Liberty Tax Service where he receive training with respect to how to prepare basic federal income tax returns.  As such, when defendant Frika Tax Service, he was not a "novice" in terms of preparing tax returns.  Second, the defendant applied for permission from the IRS to become an electronic return originator ("ERO").[6]

---

[6]  The government may offer testimony during its case-in-chief which will establish that while defendant James was employed by H&R Block, he received tax training as related to personal income taxes and that he annually completed enhancement training while employed by H&R Block. This testimony is relevant to the defendant's knowledge (and to willfulness) because he acquired the aforementioned knowledge before he opened his own tax preparation service.  In additional, the government may offer testimony from an IRS witness who will confirm that the defendant has completed several tax training refresher courses with the IRS "online."  Finally, the government may call a witness from Republic Bank who will provide testimony regarding compliance training that the defendant has received from Republic as part of Republic certification program which permits the defendant to offer refund anticipation loans to his clients.

As an ERO, the defendant acquired the privilege of electronically filing tax returns.  To become an ERO, the defendant had to demonstrate a basic understanding regarding the preparation individual tax returns.    For example, Defendant Friday knew that he was not allowed to take deductions on a tax filer's tax return as an un-reimbursed business expense without having reviewed documentary evidence to support the deduction.

Defendant Friday's willfulness can also be inferred from a consistent pattern of conduct such as taking bogus expense deductions on the returns of tax filers most of whom were wage earners as opposed to independent contractors.  *See, e.g., United States v. Bishop*, 264 F.3d 535, 550 (5th Cir. 2001); *United States v. Kim*, 884 F.2d 189, 192-93 (5th Cir. 1989). Furthermore, a defendant's prior and subsequent acts reasonably close the prosecution years can be used to prove willfulness.  *See United States v. Middleton*, 246 F.3d 825, 836-37 (6th Cir. 2001); *Matthews v. United States*, 407 F.2d 1371, 1381 (5th Cir. 1969); *United States v. Johnson*, 386 F.2d 630, 631 (3d Cir. 1967; *United States v. Magnus*, 365 F.2d 1007, 1009-10 (2d Cir. 1996).

## III.    <u>DISCOVERY</u>

The Due Process Clause requires the government to disclose to a criminal defendant any known information that is both favorable and material to the defense (hereinafter the "*Brady* doctrine").  *See Kyles v. Whitley*, 514 U.S. 419, 432 (1995); *United States v. Bagley*, 473 U.S. 667, 675-76 (1985); *United States v. Agurs*, 427 U.S. 97, 106-07 (1976); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Failing to make the required disclosures may result in the reversal of any affected conviction.

Generally, "favorable" information is either exculpatory or impeaching of the

14

government's witnesses.  (Impeachment information is commonly referred to as "*Giglio*"

information.)  "Material" information is information of such significance that, had it been

disclosed, there is a reasonable probability that the result would have been different, i.e., that

confidence in a guilty verdict would be undermined.  In *Giglio*, the Supreme Court extended the

*Brady* ruling to evidence affecting the credibility of the government's witnesses.  405 U.S. at

153-55; *see also Bagley*, 473 U.S. at 676.  Accordingly, failure to disclose material impeachment

information violates the defendant's due process rights.  *Brady*, 373 U.S. at 87; *Illinois v. Fisher*,

540 U.S. 544, 547 (2004).

   The Constitutional obligation to disclose impeachment evidence reaches only

information that is favorable to the defendant.  *See, e.g.*, *United States v. Johnson*, 581 F.3d 320,

331 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3409 (2010) ("[T]he Government did not violate

*Brady* by failing to inform the defense of the evidence it planned to use to impeach [a defense

witness] until after [witness's] direct examination.  The evidence in question was not favorable to

Johnson; rather, it called a defense witness's credibility into question."); *United States v.*

*Souffront*, 338 F.3d 809, 824 (7th Cir. 2003) (holding that when an ATF Agent was called by

defense, government was not required to disclose that he had been accused of misconduct by a

former agent; "Impeaching the testimony of their own witness is not favorable to the defense . . .

."); *Musselman v. Warden*, No. No. 3:09-cv-407, 2010 WL 1995091, at *3 (S.D. Ohio May 19,

2010) (government was not required to disclose evidence that defendant used fake identification

card; "the petitioner cites no case authority suggesting that material useful only to impeach the

defendant is *Brady* material.").

   In the case at bar, the Government has complied with Federal Rule of Criminal

15

Procedure 16, its constitutional obligations under both *Brady v. Maryland*, 397 U.S. 742 (1970),

and *Giglio v. United States*, 405 U.S. 150 (1972), and its obligations under the Jencks Act, 18

U.S.C. § 3500.  Because the defendant has requested discovery under Rule 16, he is obligated to

provide reciprocal discovery.  The government has requested such reciprocal discovery but, thus

far, has not received any such discovery.[7]

Furthermore, Rule 26.2 of the Federal Rules of Evidence and the Jencks Act

require the production of the statements of defense witnesses at trial in essentially the same

manner as is required with respect to the statements of Government witnesses.  Therefore, any

statement given by any defense witness should be given to government counsel.  *United States v.*

*Nobles*, 422 U.S. 225 (1975) (rejecting notion that the Fifth Amendment renders criminal

discovery basically a one-way); *United States v. Pulvirenti*, 408 F. Supp. 12 (E.D. Mich. 1976).

## VI.   POTENTIAL EVIDENTIARY ISSUES

### A.   F.R.E. 404(b) Evidence

In many criminal trials, the possibility exists that evidence that the parties plan to

introduce might be evidence of other crimes or uncharged conduct.  The admissibility of this type

of evidence is governed by Federal Rule of Evidence 404(b).  This rule applies to evidence of

wrongful acts that are "extrinsic" to the charged offense.[8]  Evidence which is "intrinsic" does not

---

[7]  If the defendant fails to provide reciprocal discovery, government counsel anticipates asking the Court for
an order that prohibits the defendant either referring to or offering such evidence into the trial record.

[8]  The rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove
> the character of a person in order to show action in conformity therewith.
> It may, however, be admissible for other purposes for other purposes, such
> as proof of motive, opportunity, intent, preparation, plan, knowledge, identity,
> or absence of mistake or accident, provided that upon request by the accused,
> the prosecution in a criminal case shall provide reasonable notice in advance

fall within the rule.  *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010).

        In *Green*, the Third Circuit explained that the "intrinsic" label is reserved "for two narrow categories of evidence."  *Id.* at 248.  "First, evidence is intrinsic if it 'directly proves' the charged offense."  *Id.* (citations omitted).  "Second, 'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'"  *Id.* at 249 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).  "[A]ll else must be analyzed under Rule 404(b)."  *Green*, 617 F.3d at 249.  The *Green* Court further noted:

> There is little practical difference between admitting inextricably intertwined evidence as "background" pursuant to Rules 401 and 402, and admitting it under Rule 404(b).  In both cases, the evidence must be relevant, it must pass muster under Rule 403, and it must not be introduced solely to prove the defendant's criminal propensity.  "[T]he only consequences of labeling evidence 'intrinsic' are to relieve that prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon defense counsel's request."

*Id.* at 247.

        In the case at bar, government counsel does not believe that any of the evidence that we plan to present in the above-referenced case constitutes *other acts* evidence under Federal Rule of Evidence 404(b), but out of an abundance of caution, we have provided Defendant Friday's counsel with notice that the government may elicit testimony from an IRS representative regarding the total number of tax returns that defendant Friday prepared and filed during tax years 2008 and 2009 and the percentage of the returns that claimed tax refunds.  This question

---

of trial, or during trial if the cour excuses pretrial notice on good cause shown,
of the general nature of such evidence it intends to introduce.

might also seek information regarding statistical information that the IRS has gathered over the years which focuses on a percentage comparison between the amount of itemized deductions claimed by a tax filer relative to the filer's adjusted gross income.

The foregoing evidence is relevant to the willfulness element of Section 7206(2). As such, it is not being offered as propensity evidence. The evidence is information that the jury can use to determine whether the manner in which the charged returns were prepared was the result of an accident or mistake as opposed to whether the defendant's preparation of the charged returns was willful, that is, the violation of a known legal duty.

B.      **Prohibition Against Jury Nullification Statements and Arguments**

Out of an abundance of caution, government counsel have included the following material in this trial brief to prevent inappropriate comments being made during opening statements, witness testimony, and closing argument regarding facts that are irrelevant to the elements of the charged offense. Such comments might include (1) inappropriate statements regarding the guilt or innocence of the tax filers; (2) statements regarding the government's decision to prosecute Defendant Friday in lieu of the tax filers; (3) statements about the serious penalties that Defendant Friday is facing if convicted; (4) statements about the effect that a conviction would have the defendant's family and his health;[9] and (5) assertions that the government has failed to prove, to a high degree of mathematical certainty, the extent of the tax loss associated with Defendant Friday's preparation of the filers tax returns.

While the standard for relevance is a low one, evidence must tend to make the

---

[9]  The defendant was allegedly hospitalized for diabetes. The exact details regarding this matter are unclear.

existence of any material fact by more or less probable.  Fed. R. Evid. 401.  Moreover, relevant

evidence can be excluded by the court when the probative value of such evidence is substantially

outweighed by the danger of unfair prejudice, confusion, or waste of time.  Fed. R. Evid. 403.

The statements set forth above do not meet the first standard, but also should be excluded under

Rule 403.  *See, e.g.*, *United States v. Kemp*, 500 F.3d 257, 301 (3d Cir. 2007) (citing *United*

*States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006)) (finding that "a juror who . . . commits jury

nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional

role.").  Federal courts have been vigilant in prohibiting the defense of jury nullification in any of

its many forms. *See United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997).  One court has

stated:

> A jury has no more "right" to find a "guilty" defendant "not guilty"
> than it has to find a "not guilty" defendant "guilty," and the fact
> that the former cannot be corrected by a court, while the latter can
> be, does not create a right out of a power to misapply the law.
> Such verdicts are lawless, a denial of due process and constitute an
> exercise of erroneously seized power.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983).  The Second Circuit has

instructed that jury nullification "is by no means a right or something that a judge should

encourage or permit if it is within his authority to prevent."  *United States v. Thomas*, 116 F.3d

606, 615 (2d Cir. 1997).  Accordingly, the Second Circuit has set forth a clear duty for trial

judges when jury nullification issues present themselves:

> Inasmuch as no juror has a right to engage in nullification—and, on
> the contrary, it is a violation of a juror's sworn duty to follow the
> law as instructed by the court—trial courts have a duty to forestall
> or prevent such conduct, whether by firm instruction or
> admonition. . . .

*Id*. at 616 (emphasis added).  The Court should follow that duty here and prohibit such attempts

at nullification.

Because the jury enjoys no right to nullify criminal laws, the defendant has no consequent right to (1) adduce evidence that tends to be probative of the irrelevant issue of nullification and which is not probative of any defense at law, (2) argue nullification to the jury or (3) have the Court give a nullification instruction to the jury. *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998).  Federal courts absolutely bar defense examination on nullification or its varied component parts, for example, (1) the potential penalties facing the defendant, *see United States v. Cropp*, 127 F.3d 354, 358 (4th Cir. 1997), and (2) any evidence irrelevant for any purpose other than to provoke the finder of fact to disregard the law, *United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995).  Courts also have barred defense arguments to the jury on nullification issues.  *See United States v. Manning*, 79 F.3d 212, 219 (1st Cir. 1996); *United States v. Calhoun*, 49 F.3d 231, 236 n.6 (6th Cir. 1995); *United States v. Trujillo*, 714 F.2d 102, 105-06 (11th Cir. 1983) (citing other appellate cases).

Many appellate courts also have held, or at least observed, that a criminal defendant is not entitled to have the jury instructed that it can, despite finding the defendant guilty beyond a reasonable doubt, disregard the law and acquit that defendant.  *United States v. Rith*, 164 F.3d 1323, 1338 (10th Cir. 1999); *Thomas*, 116 F.3d at 616 n.9; *United States v. Edwards*, 101 F.3d 17, 19 (2d Cir. 1996); *United States v. Sepulveda*, 15 F.3d 1161, 1189-90 (1st Cir. 1994); *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1991); *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983); *Washington*, 705 F.2d at 492; *Lucero*, 895 F. Supp. at 1426 (citing appellate cases).  In fact, courts have permitted strong instructions in the opposite direction—instructions calculated to prevent juries from nullifying and, instead, to follow the

20

law.  *See Bruce*, 109 F.3d at 327 (approving this instruction: "[y]ou must not question any rule of law stated by me in these instructions.  Regardless of any opinion you may have as to what the law ought to be, you must base your verdict on the law given by me").

Courts are so concerned about their responsibilities regarding protecting against nullification that they regularly have granted the government's in limine motions at the trial's outset to prohibit defense attempts to adduce evidence regarding or to argue nullification.  For instance, in *United States v. Andreas*, a criminal antitrust price-fixing matter, the government moved to preclude the defendants from adducing evidence and arguing (1) that their conduct actually was good for the market; (2) that there was government misconduct; (3) about what serious penalties faced them; (4) about the effect a conviction would have on the defendants' families; and (5) about defense counsel's prior experience as a prosecutor.  23 F. Supp. 2d 835, 851-52 (N.D. Ill. 1998).  The court precluded all of this, save that the defendants were permitted to inquire on the authenticity of the Government's audio- and videotape evidence.  *Id.*  In particular, the district court explained:  "[a]s a matter of law, the defendants are prohibited from raising a jury nullification argument to the jury. . . .  Impassioned pleas expounding the defendants' virtues as employers and how potential convictions would affect their families are irrelevant in determining their guilt or innocence."  *Id.* at 852 (citation omitted).

Similarly, in *Trujillo*, defense counsel sought to argue that, notwithstanding the law, the jury could acquit his client of narcotics trafficking because his client had cooperated with the government for a time after his arrest.  714 F.2d at 105.  The trial court barred him from doing so.  The Eleventh Circuit affirmed the trial court's ruling, explaining:

> In arguing the law to the jury, counsel is confined to principles that
> will later be incorporated and charged to the jury. . . .  The jury in

> this case was properly instructed on their duty to follow the law as
> stated in the jury instruction.  Appellant's jury nullification
> argument would have encouraged the jurors to ignore the court's
> instruction and apply the law at their caprice.

*Id.* at 106.  Therefore, the *Trujillo* court held that defense counsel could not argue jury

nullification during closing argument and that the trial court correctly ruled when it foreclosed

that possibility.

Here, inappropriate statements regarding the guilt or innocence of the tax filers is

not relevant to this case.  The jury should be instructed that only Defendant Friday is on trial

here, and the jury is charged to make a decision regarding his guilt or innocence alone.

Accordingly, government counsel intends to move in limine for such an instruction.

## VII.   OTHER EVIDENTIARY MATTERS

### A.   Admissibility of Documents

In criminal tax fraud cases, it is customary for government counsel to offer

numerous documents into evidence.   Although the government counsel will requests that the

defendant stipulate to the admissibility of many of these documents, counsel is presenting a brief

discussion of the issues regarding the admissibility of various documents that may be offered in

this case in the event that the defendant does not agree to a stipulation regarding the authenticity

and non-hearsay nature of the subject documents.

### B.   Service Center Records

Government counsel will offer certified income tax returns frm the Internal

Revenue Service Center.  These documents are admissible under Federal Rules of Evidence

803(6), 803(8), and 902, and 26 U.S.C. § 6064.  Consequently, a representative of these IRS

Service Centers need not be called to authenticate these returns.  Should the Court disagree,

however, counsel is prepared to call such a representative.

### C.   Business Records

Government counsel may also offer business records as evidence pursuant to Federal Rule of Evidence 803(6), as an exception to the hearsay rule.

To qualify for admissibility under Federal Rule of Evidence 803(6), a business record must satisfy the following four requirements:  (1) the record must have been made in the course of a regularly conducted business activity; (2) the record must have been kept in the regular course of that business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge. *See United States v. Salgado*, 250 F.3d 438, 451 (6th Cir. 2001); *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998).  This information must be presented through "the testimony of the custodian or other qualified witness."  Fed. R. Evid. 803(6).

Business records meeting these criteria are admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  *Id*. "Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized in a business record."  *Weinstock*, 153 F.3d at 276.  The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's record keeping practice.  *Id*. (citing *In Re Custodian of Records of Variety Distri., Inc.*, 927 F.2d 244, 248 (6th Cir. 1991)).  Likewise, "[t]o be an 'other qualified witness,' it is not necessary that the person laying the foundation for the introduction of the business record have personal knowledge of their preparation."  *Dyno*

*Construction Co. v. McWane, Inc.*, 198 F.3d 567, 575-76 (6th Cir. 1999).

Business records integrated into an office's records and relied upon in its day-to-day activities are admissible under Rule 803(6). *United States v. Mendel*, 746 F.2d 155, 166 (2d Cir. 1984); *see also United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992) (fact that business record was from another business was "irrelevant" because business owner relied upon the document).

Documents may properly be admitted under this rule as business records even though they are the records of a business entity other than one of the parties, *see United States v. Consolidated Edison Co.*, 580 F.2d 1122, 1131 n.18 (2d Cir. 1978), and even though the foundation for their receipt is laid by a witness who is not a employee of the entity that owns and prepared them. *See Mendel*, 746 F.2d at 166; *United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986). Further, there is no requirement that the person whose first-hand knowledge was the basis of the entry be identified so long as it was the business entity's regular practice to information from such a person. *See United States v. Atchley*, 699 F.2d 1055, 1059 (11th Cir. 1983).

Under certain circumstances, the requirements for admission of a business record may be met without testimony of a custodian or other witness. *See, e.g.*, Fed. R. Evid. 902(11) – Certified Domestic Records of Regularly Conducted Activity. The Government may use Rule 902(11) certifications in this case, and will provide the defendant with the notice required by Rule 902 if so. The foundational requirements of Rule 803(b)(6) may also be met by other documentary evidence, affidavits, or admissions; or the admissibility may "be established if the court takes judicial notice of the nature of the business and the nature of the records as observed

24

by the court, particularly in the case of bank statements and similar statements."  5 Weinstein's

Evidence ¶ 803.08[8][c], at 803-85 (2009).

### D.  Photocopies and Other Duplicates

Many of the documents that the Government may offer into evidence are

photocopies of documents.  Photocopies are admissible pursuant to Federal Rules of Evidence

1002 and 1003.  Federal Rule of Evidence 1002 provides that "[t]o prove the contents of a

writing, recording, or photograph, the original writing, recording, or photograph is required,

except as otherwise provided in these rules or by Act of Congress."  Furthermore, "[a] duplicate

is admissible to the same extent as an original unless (1) a genuine question is raised as to the

authenticity of the original or (2) in the circumstances if would be unfair to admit the duplicate in

lieu of the original."  Fed. R. Evid. 1003.

Microfilm and other prints are admissible to the same extent as originals whether

the original is in existence or not.  28 U.S.C.§ 1732(b) (Federal Business Record Act).

Therefore, microfilm reproduction of bank statements, checks, and deposit tickets are admissible

in the same manner as the originals.  *United States v. Saputski*, 496 F.2d 140, 141-42 (9th Cir.

1974).

### E.  Attendance of Summary Expert Witness at Trial

The United States requests that Joseph Piccone, a Revenue Agent with the

Internal Revenue Service, be allowed to attend the trial.  Revenue Agent Piccone is the

Government's summary expert witness who offer testimony relevant to the "materiality" element

of Section 7206(2) and his examination of the returns charged in the indictment for the purpose

of computing the criminal tax loss resulting from the fraudulent returns prepared by the

defendant. The agent's testimony regarding the tax loss, as is the case with his testimony

regarding the duties of a revenue agent, is relevant evidence which the jury may consider in

determining whether the government has proven, beyond a reasonable doubt, the "materiality

element" and the "willfulness element" of Section 7206(2).  Government counsel will also elicit

testimony from defendant Piccone for the purpose of seeking a ruling from the Court that this

witness is an expert witness, as defined in Federal Rule of Evidence 702.

It is well established that a summary witness can introduce summaries or

computations prepared or adopted by him based on the evidence presented at trial so that he may

better explain his testimony to the jury.  *See United States v. Sorrentino*, 726 F.2d 876, 884 (1st

Cir. 1984); *United States v. Mohney*, 949 F.2d 1397, 1404-06 (6th Cir. 1991); *see, e.g.*, *United

States v. Depaoli,* 41 Fed. Appx. 543 (3d Cir. 2002) (any error in allowing admission of

testimony from Internal Revenue Service agent who expressed opinion as a summary witness as

to defendants' intent relating to business deductions was not prejudicial in defendants' criminal

tax trial; remark was brief statement in midst of lengthy testimony and agent's statement did not

directly address defendants' intention to evade payment of income taxes); *United States v. Stone,

222 F.R.D. 334* (E.D. Tenn. 2004).

Since Agent Piccone will testify based on evidence and testimony admitted during

the course of a trial, the Government requests that he be exempted from Rule 615.  A witness

who bases his opinion or testimony on the evidence in a particular case cannot testify if he is

unaware of what that evidence is.  *Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 630

(6th Cir. 1978).

**F.**     <u>Presence of Government's Representative During Trial</u>

The Government will designate IRS Special Agent Marita Gehan as the Government's representative at trial.  Mrs. Gehan is the case agent in this matter.  Even if the Government decides to call Mrs. Gehan as a witness, case law permits him to remain in the courtroom as the Government's representative.  *United States v. Mallis*, 467 F.2d 567, 568 (3d Cir. 1972).

**G.**     <u>Testimony of Undercover Agent</u>

As part of its case-in-chief, the Government will present the testimony of an IRS agent who, while acting in an undercover capacity, met with Defendant James for the purpose of determining whether the defendant would prepare a false return.    The agent was wearing a recording device.   The device, which had both audio and video capabilities, recorded the encounter between the agent and the defendant.    Following the agent's testimony, government counsel will ask permission of the Court to play the recording in court.  The jury will be provided with a copy of a transcript of the tape.    The agent's testimony is relevant to the willfulness element of Section 7206(2) because the information that the agent gave the defendant would have resulted in unwarranted tax refund of approximately $2,416.

**H.**     <u>Impeachment of Government Witnesses</u>

It is possible that one or more Government witnesses may become hostile, which will may require the Government to impeach the credibility of a witness who denies a previous statement or claims that he or she cannot remember a previous statement.  Federal Rule of Evidence 607 allows the credibility of a witness to be attacked by any party.  The Government may call a witness that it knows to be hostile, and it may impeach that witness's credibility.

27

Surprise is not a necessary prerequisite to impeaching a party's own witness under Federal Rule of Evidence 607.  *See United States v. Palacios*, 556 F.2d 1359, 1363 (5th Cir. 1977).

The Government expects the majority of the testimony to be consistent with prior statements.  The witnesses, however, may attempt to protect the defendant from certain inculpatory statements.  Federal Rule of Evidence 613 provides for the introduction of prior inconsistent statements, not under oath, of a witness.  The statement may be used for impeachment purposes only; extrinsic evidence of the statement is not substantive evidence.

Testimony is inconsistent under Rule 801(d)(l)(A) whenever a reasonable person could infer, in comparing the two statements, that they were produced by inconsistent beliefs. *United States v. Morgan*, 555 F.2d 238, 242 (9th Cir. 1977).  Such prior testimony is admissible if it is "helpful in resolving a material, consequential fact in issue," *id.*, and need not be "diametrically opposed" to or "logically incompatible" with a witness's current answers in order to be "inconsistent" within the meaning of Rule 801(d)(l)(A).  *United States v. Williams*, 737 F.2d 594, 608 (7th Cir. 1984).  Inconsistency may be shown through evasive answers, inability to recall, silence, or a purported change in memory.  *See United States v. Odom*, 13 F.3d 949, 955 n.3 (6th Cir. 1994) (grand jury testimony admitted as substantive evidence at trial where a witness gave inconsistent testimony); *Williams,* 737 F.2d at 608.

A partial or vague recollection is inconsistent with a total or definite recollection, and justifies admission of a more-detailed grand jury statement.  *See Distler*, 671 F.2d at 958. "[I]f a witness has testified to [certain] facts before a grand jury and forgets or denies them at trial, his grand jury testimony or any fair representation of it falls squarely within Rule 801(d)(1)(A)."  *United States v. Marchand*, 564 F.2d 983, 999 (2d Cir. 1977); *United States v.*

*Mornan*, 413 F.3d 372, 379 (3d Cir. 2005) (holding that "a prior statement may be admitted under Rule 801(d)(1)(A) *where the witness's memory loss is not genuine*" and citing cases involving grand jury transcripts); *cf. United States v. Thompson*, 708 F.2d 1294, 1303 (8th Cir. 1983) (a limiting instruction not required where prior inconsistent statement given under oath at prior trial).

## VIII.   <u>CONCLUSION</u>

The foregoing is a summary of the points that the Government anticipates may be helpful to the Court during the trial.  Should any other legal issues arise that have not been covered in this memorandum, the Government respectfully requests leave of Court to submit further memoranda as may be necessary.

Respectfully submitted,

ZANE DAVID MEMEGER
UNITED STATES ATTORNEY


/Floyd J. Miller

_____

Floyd J. Miller
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Trial Brief was filed with the Clerk of Court for the United States District Court and that a copy of the same was served upon counsel for the defendant by United States Mail, first class, postage prepaid which was addressed as follows this 2nd day of August 2012:

Gilbert Scutti, Esquire
Attorney & Counselor at Law
31 Station Avenue
Somerdale, New Jersey 08083

/Floyd J. Miller

_____

Floyd J. Miller
Assistant United States Attorney