IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Number: 12-cr-00106-NS-1 |
| v. | : | |
| FRIDAY JAMES | : | |

### GOVERNMENT AMENDED TRIAL BRIEF

**I.    INTRODUCTION**

In 2008 and 2009, Defendant Friday James was a tax preparer in the Eastern District of Pennsylvania.  He stands charged in this Court with having prepared 27 federal income tax returns that were materially false.  The Indictment charges that Defendant James' conduct violated 26 U.S.C. Section 7206(2).   The individuals for whom Defendant James prepared the returns will provide the bulk of the government's testimonial evidence.  This evidence will be corroborated, in part, by the tax returns referenced in the indictment which have been certified by the Internal Revenue Service.[1]

The critical trial issues will be whether the returns prepared by Defendant James were materially false and whether Defendant James' conduct was willful.   Defendant James' electronic filing identification number ("EFIN") is attached to each of the returns charged in the indictment.  As such, government counsel does not anticipate a factual dispute over the issue of whether Defendant James filed the returns charged in the indictment.

---

[1]  The certified returns will be offered into evidence at the beginning of the trial by counsel for the United States pursuant to Federal Rule of Evidence 902(1). The returns have been marked for identification as GX #1 through #27.  Government counsel will also offer into evidence under the same rule a copy of the application that the defendant filed with the Internal Revenue Service to becoming an electronic return originator ("ERO").  This exhibit has been marked for identification as GX#28.

There are no outstanding motions that must be ruled upon by the Court prior to trial which is scheduled to begin on September 10, 2012.

## II.     SUMMARY OF THE EVIDENCE

Government counsel anticipates that the evidence will show that during tax years 2008 and 2009, Defendant James, a former employee of both H&R Block and Liberty Tax Service, willfully aided and assisted his clients in preparing materially false federal income tax returns by deducting unreimbursed employee business expenses where the nature of the filers' employment did not support the deductions.  In some instances, Defendant James falsely included on some of the 27 returns at issue here the First Time Home Buyer Credit for filers who were not entitled to receive the credit because the filers were not first time home buyers.

Defendant James' tax fraud scheme was initially discovered by a computer software program which identified an unusual pattern of deductions and credits in the universe of tax returns prepared by the defendant.  For example, the amount of itemized deductions taken on a filer's tax return in relation to the filer's adjusted gross income exceeded the national average which the IRS has established from historical data.  Second, the filers were all employed as opposed to being business owners or independent contractors.   Third, all of the returns claimed substantial refunds.

The bulk of the filers were unaware of the deductions that Defendant James had taken on their returns.  Other than their IRS Form W-2 and mortgage interest and tax statements for homeowners, the filers did not give Defendant James documents to support many of the deductions that were listed on their tax returns.   The filers will state during their testimony that they were principally interested in the amount of refund, if any, that they were slated to receive.

The filers will further testify that the reason why they chose Defendant James to prepare their tax returns was because of their belief that Defendant James was an expert in preparing returns and because Defendant James, like the bulk of the filers, were West African immigrants.[2]  In summary, the jury must decide whether the returns prepared by the defendant were materially false and whether the manner in which the defendant prepared the returns, and his conduct in interacting with his clients, caused his conduct to be willful within the meaning of 26 U.S.C. Section 7206(2).

### III. STATUTE

Title 26, United States Code, Section 7206(2) is the statute that Defendant James stands accused of violating.  The language of the statute provides that:

> Any person who –
>
>> (1) . . .
>>
>> (2)     **Aid or assistance**. - Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim or other document, which is fraudulent or is false as to any material matter, *whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim or document* . . .;

---

[2]  The majority of the defendant's clients were born in either Liberia or Sierra Leone.

>shall be guilty of a felony and, upon conviction thereof, shall be fine not more than [$250,000][3] or imprisoned not more than 3 years, or both, together with the cost of prosecution.

**IV.    STATUTORY ELEMENTS**

To establish a violation of Section 7206(2), the government must prove, with competent evidence, the following elements beyond a reasonable doubt:

>1.    Defendant James aided or assisted in, procured, counseled, or advised the preparation or presentation of a document in connection with a matter arising under the internal revenue laws;
>
>2.    The document was false as to a material matter;
>
>3.    The defendant's conduct was willful.

*United States v. Gambone*, 314 F.3d 163, 174 (3d Cir. 2003); *United States v. La Haye*, 548 F.2d 474, 475 (3d Cir. 1977).

The purpose of Section 7206(2) is to make it a crime for one to knowingly assist another tax filing person or entity in preparing and filing a false income tax return with the Internal Revenue Service. *United States v. Jackson*, 452 F.2d 144, 147 (7th Cir. 1971). Section 7206(2), and its predecessor statutes, have been directed against fraudulent tax return preparers since as early as 1939. In *United States v. Kelley,* 105 F.2d 912 (2d Cir. 1939), Judge Learned Hand described the purpose of the statutory predecessor of Section 7206(2) as follows:

---

[3] Under 18 U.S.C. § 3571, the maximum fine for violations of 26 U.S.C. § 7206(2) is at least $250,000 for individuals and $500,000 for corporations. Alternatively, if any person derives pecuniary gain from the offense, or if the offense results in a pecuniary loss to a person other than the defendant, then the defendant may be fined not more than the greater of twice the gross gain or twice the gross amount.

> The purpose was very plainly to reach the advisers of taxpayers who got up their returns, and who might wish to keep down the taxes because of the credit they would get with their principals, who might be altogether innocent.

*Kelley*, 105 F.2d at 917.  Section 7206(2) has a broad sweep, making all forms of willful assistance in preparing a false return an offense.  *United States v. Hook*, 848 F.2d 785, 791 (7th Cir. 1988) (citation omitted); *accord United States v. Coveney*, 995 F.2d 578, 588 (5th Cir. 1993).  Courts have held that anyone who causes a false return to be filed or furnishes information which leads to the filing of a false return can be guilty of violating Section 7206(2).  *See, e.g., United States v. Clark*, 139 F.3d 485, 489-90 (5th Cir. 1998).

Section 7206(2) is not limited to the preparation of false tax returns.  The statute also prohibits aiding or assisting in, procuring, counseling, or advising the preparation or presentation of a false document.  Thus, the fact that a defendant does not actually sign or file the document is not material.  *Coveney*, 995 F.2d at 578 (observing that "[a] person need not actually sign or prepare a tax return to aid in its preparation"); *United States v. Crum*, 529 F.2d 1380, 1382 n.4 (9th Cir. 1976) (approving instruction in case arising under Section 7206(2) that "the fact that the defendant did not sign the income tax returns in question is not material")).

It is not defense to a Section 7206(2) prosecution that the taxpayer who submitted the return was not charged, even when the taxpayer was aware of the falsity of the return, went along with the scheme, and could have been charged with a violation.  Any criminal mental state (or lack thereof) on the part of the taxpayer is not relevant to the propriety of a defendant's prosecution under Section 7206(2).  *United States v. Jennings*, 51 Fed. Appx. 98, 99-100 (4th Cir. 2002) (*per curiam*) (citations omitted).  Thus, both a defendant supplying false information to an

entirely innocent taxpayer -- and a defendant who gives false information to a taxpayer who willingly accepts and uses the false information -- are guilty of violating Section 7206(2). *Baker v. United States*, 401 F.2d 958, 987-88 (D.C. Cir 1968) (affirming convictions of defendants charged with conspiracy and violation of Section 7206(2), where defendants agreed to report fees earned by one defendant on the other defendant's tax return, which the second defendant filed, to conceal the first defendant's receipt of additional taxable income).

A tax deficiency is not a prerequisite to a conviction under Section 7206(2). *See Hull v. United States*, 324 F.2d 817, 823 (5th Cir. 1963) (rejecting the defense argument that there was insufficient evidence that the return was false as to a material matter because the indictment did not state the amount by which income had been under-reported). Government counsel, however, may elicit testimony regarding the criminal (not civil) tax deficiency resulting from the manner in which Defendant James prepared the returns that are charged in the indictment. [4]

The government's theory of prosecution is that Defendant James willfully aided and assisted tax filers, all of whom were W-2 wage earners, in filing false tax returns for the purpose of insuring that the filers received tax refunds in an amount to which they were not entitled. The evidence will show that the defendant committed these crimes by inflating, or in some cases, creating, bogus deductions on the returns of the filer and claiming the First Time Home Buyers Credit, which the bulk of the filers were not entitled to claim because the filers were not first time home buyers.

---

[4] With the Court's permission, government counsel plans to elicit such testimony from IRS Revenue Agent Joseph Piccone who will be testifying as an summary expert witness under Federal Rules of Evidence 702 and 704. An expert witness statement will be given to defendant's counsel as required by Federal Rule of Criminal Procedure 16(G).

The government anticipates that some filers will testify that the <u>only</u> document that they gave Defendant James to prepare their tax returns was their IRS Form W-2.  Even though Defendant James did not have, or request, documents from his clients to support expense deductions, he still included the deductions on the returns.  Based on his training and experience, Defendant James knew that his conduct was illegal. As such, the manner in which Defendant James prepared the returns charged in the indictment was not the result of accidents or mistakes.  His conduct was willful.  The evidence will show that Defendant James violated a known legal duty to accurately prepare tax returns before filing them with the IRS.

**V.     DISCUSSION**

To convict Defendant James, the government bears the burden of proving beyond a reasonable doubt, with competent evidence, three elements each of which are discussed below.

> **1.     Aiding and Assisting in the Preparation
> and Presentation of the Returns**

The first element that the government must prove is that Defendant James knowingly assisted other individuals in preparing and presenting to the IRS federal income tax returns that were materially false.  *Nye & Nissen v. United States*, 336 U.S. 613, 618 (1949) ([i]n order to aid and abet another to commit a crime, it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, or that he seeks by his action to make it succeed) .  *See also United States v. Jackson*, 452 F.2d 114, 147 (7th Cir. 1971).

Whether the filers knew that the returns were false at the time that Defendant James filed the returns is not a relevant fact in determining whether Defendant James' conduct violated

Section 7206(2). The language of Section 7206(2) makes clear that it does not matter whether a defendant's client was unaware of the materially false items placed on his return, or was willing participant.

Defendant James may, through cross examination, attack the credibility of the individuals for whom he prepared the false returns. This attack might arise through questions posed to the filers which suggest that the filers knew the returns were false at the time that they were prepared; yet, the filers concurred in the manner in which Defendant James prepared the false returns because the filers wanted to receive a large refund. Alternatively, the defense might argue that the filers gave Defendant James documents to support, for example, vehicle expenses, charitable deductions, expenses paid for business meals and entertainment which were included on the returns.

Government counsel does not believe that the foregoing questions are relevant areas of cross examination. *See United States v. Jennings*, 51 Fed. Appx. 98, 9-100 (4th Cir. 2002) (per curiam) (citations omitted) (rejecting a defense argument that a taxpayer-witnesses committed perjury either when they sign the jurat indicating that they had examined their returns, or when they testified under oath that they had not examined their return before signing them). In the case at bar, none of the filers were given an opportunity by Defendant James to examine their returns before the defendant filed them. As such, the filers will testify that they had no knowledge of the contents of the returns prepared by the defendant.

As noted in *Baker v. United States*, 401 F.2d 958, 987-88 (D.C. Cir. 1968), the convictions of defendants were affirmed on appeal where the defendants had been charged with conspiracy and violations of Section 7206(2) based on the theory that the defendants agreed to

report fees earned by one defendant on the other defendant's tax return which the second defendant filed to conceal the first defendant's receipt of additional taxable income. *See also United States v. Lefkowitz*, 125 F.3d 608, 618-19 (8th Cir. 1997) (affirming Section 7206(2) conviction of corporation president who gave an accountant false information that the president knew would result in the filing of a false return); *United States v. Marshall*, 92 F.3d 758, 760 (8th Cir. 1996) (noting that the taxpayers were unaware of inaccuracies while rejecting evidence sufficiency challenge to Section 7206(2) conviction)); *United States v. Motley*, 940 F.2d 1079, 1084 (7th Cir. 1991) (in rejecting claim that evidence on Section 7206(2) counts was insufficient because defendant neither signed any of the returns or. . . personally mailed any of the returns himself, the Court of Appeals noted that Section 7206(2) specifically permitted conviction of a defendant whether or not the falsity or fraud was with the knowledge or consent of the innocent person)); and *United States v. Hook*, 848 F.2d 785, 791 (7th Cir. 1998) (observing that defendant willfully caused tax preparer to file a false estate tax return and therefore violated Section 7206(2) regardless of whether the tax preparer knew of the falsity or fraud).

### 2. **The Returns Were Fraudulent and False as to a Material Matter**

Under the second element of Section 7206(2), the government must prove that each tax return at issue was false regarding a material matter. In the Third Circuit, an item is materially false if it is essential to an accurate determination of [the taxpayer]'s tax liability." Third Circuit Model Criminal Jury Instruction, False Income Tax Return - Return was Materially False, 6.26.7206-2 (2006). The First Circuit employs a similar definition: "[A] 'material' matter is one that affects or influences the IRS in carrying out the functions committed to it by law or 'one that is likely to affect the calculation of tax due and payable.'" *United States v. Griffin*, 524 F.3d 71,

76 (1st Cir. 2008) (emphasis in original) (citations omitted). "A false statement may be material even if it was only likely to influence the calculation of tax due and payable." *Id*. at 76-77. It is well settled that the issue of materiality is a question for the jury. *See Neder v. United States*, 527 U.S. 1, 8 (1999); *United States v. Gaudin*, 515 U.S. 506, 522-23 (1994).

Furthermore, proof of one materially false item on a tax return is sufficient. Here, the indictment charges that the returns prepared by Defendant James were materially false because he inflated unreimbursed employee business expenses for the individuals whose returns are referenced in the indictment. In addition, some of returns that Defendant James prepared were materially false because he claimed that the filers were entitled to the First Time Home Buyer's Credit when the filers were not entitled to receive the credit. Given the rather modest fees that the defendant charged his clients, it seems as though that the defendant's purpose in preparing the false returns was to obtain a large refund for his clients so that his "reputation" as a person who could obtain large refunds from the IRS would become well known. His conduct, however, caused many of his clients to incur severe financial hardships, as the evidence will show, because the individuals who received refunds that they were not entitled to received were required to repay the refunds to the United States along with interest and penalties. As such, the defendant's conduct victimized his client.

Regarding the issue of materiality, the government does not have to prove that more than one item on a return was false where more than one item, as is the case here, was charged as being materially false. Proof of any one material falsity will support a conviction. *See United States v. Broscoe*, 65 F.3d 576, 588 (7th Cir. 1995); *United States v. Null*, 415 F.2d 1178, 1181 (4th Cir. 1969). But the jury must unanimously agree as to at least one material falsity in order to

convict. *See United States v. Ryan*, 828 F.2d 1019, 1020 (3d Cir. 1987) (discussing unanimity requirement for conviction for making false statement to federally insured bank under 18 U.S.C. 1014); Third Circuit Model Criminal Jury Instructions, False Income Tax Return - Unanimity as to Falsity, 6.26.7206-5 (2006).

Finally, the existence of a tax deficiency or loss to the government is not an element of Section 7206(2). *Accord United States v. Olgin*, 745 F. 263, 272 (3d Cir. 1984); Third Circuit Model Criminal Jury Instructions, False Income Tax Return - Return was Materially false, 6.26.7206-3 (2006).

### 3.     Defendant James Acted Willfully

Willfulness has been defined by the Supreme Court as a voluntary, intentional violation of a known legal duty. *Cheek v. United States*, 498 U.S. 192, 200 (1991); *United States v. Pomponio*, 429 U.S. 10, 12 (1976). An act is done willfully if it is done intentionally, as opposed to negligently, inadvertently, or by mistake. *Id.* As a mental state, willfulness is a subjective standard that, absent a confession or admission, must be inferred from a defendant's background or conduct. *United States v. Ashfield*, 735 F.2d 101, 105-07 (3d Cir. 1084).

Willfulness is most effectively viewed in two parts: (1) that a defendant knew of his obligations under the tax laws – the knowledge element, and (2) despite the fact of having knowledge of his or her duty under the law, a defendant intentionally violated the law – the conduct element. Good motive alone is not a defense to a finding of willfulness where the act done or omitted is a crime. Motive is irrelevant except as it bears on intent. *See Pomponio*, 429 U.S. at 11-12. *Accord United States v. Dillon*, 566 F.2d 702, 704 (10th Cir. 1977).

Various facts are relevant to proving willfulness. For example, a person's willful intent

may be shown by the surrounding facts and circumstances. These include an individual's educational background, training and experience in preparing tax returns. *See, e g., United States v. Rischard*, 471 F.2d 105, 108 (8th Cir. 1973) (a jury may consider general educational background and experience in determining willfulness).

In the case at bar, several facts are indicative of Defendant James' willfulness. Prior to opening his own tax preparation service, Defendant James worked for H&R Block Tax Services[5] and Liberty Tax Services. The defendant received training from both employers with respect to how to prepare basic federal income tax returns. Equipped with this knowledge, when Defendant James started operating Frika Tax Service, he was qualified to prepare federal income tax returns. Second, Defendant James applied for permission, from the IRS to become an ERO which was a position of trust. As an ERO, Defendant James acquired the privilege of electronically filing tax returns. To become an ERO, Defendant James had to demonstrate a basic understanding of how to both prepare and file federal income tax returns. Government counsel plans to elicit testimony from an IRS employee who will provide information regarding the qualifications for a return preparer to become an ERO.

Defendant James' willfulness can also be inferred from a consistent pattern of conduct such as taking bogus expense deductions on the returns of tax filers most of whom were wage earners as opposed to independent contractors. *See, e.g., United States v. Bishop*, 264 F.3d 535, 550 (5th Cir. 2001); *United States v. Kim*, 884 F.2d 189, 192-93 (5th Cir. 1989). Furthermore, a defendant's prior and subsequent acts reasonably close to the prosecution years can be used to

---

[5] Government counsel plans to present the testimony of a witness from H&R Block who will describe the training that each of its employees are required to complete in order to become a tax preparer and well as continuing educational requirements that the preparer are required to satisfy.

prove willfulness. *See United States v. Middleton*, 246 F.3d 825, 836-37 (6th Cir. 2001); *Matthews v. United States*, 407 F.2d 1371, 1381 (5th Cir. 1969); *United States v. Johnson*, 386 F.2d 630, 631 (3d Cir. 1967; *United States v. Magnus*, 365 F.2d 1007, 1009-10 (2d Cir. 1996).

## VI.    Summary Expert Witness

Government counsel will be seeking the Court's permission to allow IRS Special Agent Joseph Piccione to offer opinion testimony regarding the deductibility of certain business expenses that were included on the tax returns prepared by Defendant James. Agent Piccone has been employed by the IRS as a revenue agent for more than 25 years. Based on his knowledge, training and experience in the field of federal income tax compliance, government counsel submits that Agent Piccione is qualified to provide opinion testimony within the parameters of Federal Rules of Evidence 702 and 704. Agent Piccione will offer his opinion regarding the requirements for deducting business expenses under Internal Revenue Code Section 162.[6] This code section identifies the limitation placed upon the deduction of business expenses for individuals engaged in a trade or business. As such, the code section is generally not available to individuals who were W-2 wage earners unless the expense incurred was a requirement of the filer's employment as a W-2 wage earner. Moreover, even when an expense is deductible under Section 162, the amount of the deduction must exceed 2% of the filers' adjusted gross income.

Agent Piccione will testify that he examined each of the returns charged in the indictment

---

[6]    Section 162(a) of the Internal Revenue Code (26 U.S.C. § 162(a)), is part of United States taxation law. It concerns deductions for business expenses. It is one of the most important provisions in the Code, because it is the most widely used authority for deductions If an expense is not deductible, then the cost is considered to be a consumption expense. Section 162(a) requires the following elements different elements in order to claim a deduction. It must be an: (1) ordinary and necessary expense; (2) that was paid or incurred during the taxable year; (3) in carry on a trade or business activity. *PNC Bank, Inc. v. C.I.R.*, 218 F.3d 822 (3d Cir. 2000).

prior to trial. He will further listen to the trial testimony of each of the filer. If the trial testimony corroborates, for example, the filer's employment status as a W-2 wage earner, the agent will likely testify that some of the expense deductions listed on the returns by Defendant James were fraudulent. For example, most the returns prepared by Defendant James claimed meals and entertainment as a deductible business expenses. These entries was false because W-2 wage earners, as a general rule, have no business related reasons to incur expenss for meals and entertainment. The mere fact that a wage earner decides to eat lunch during, say an 8-hour workday, does not give the employee the right to deduct meals and entertainment from the income that he earned during a tax year. The same holds true for deductions, in the case of one filer, where Defendant James deducted the cost of cleaning men's suits that the filer allegedly wore to work each day.[7]

## VII. CONCLUSION

The foregoing is a brief summary of the evidence and legal issues which might arise during the trial.

Respectfully submitted,

ZANE DAVID MEMEGER
UNITED STATES ATTORNEY

/Floyd J. Miller
_____
Floyd J. Miller
Assistant United States Attorney

---

[7] If the defendant testifies, government counsel will ask the defendant about the $2,250 expense deduction that he claimed on his 2008 return which he labeled as "business suits N dry cleaning." While this return was not charged among the 27 counts in the indictment, government counsel submits that he entitled to ask the defendant about his 2008 return since the return constitutes a "statement" by the defendant under Rule 16 of the Federal Rules of Criminal Procedure.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Government's Trial Brief was filed with the Clerk of Court for the United States District Court and that a copy of the same was served upon counsel for Defendant Friday James by United States Mail, first class, postage prepaid which was addressed as follows this 27th day of August 2012:

Gilbert Scutti, Esquire<br>
Attorney & Counselor at Law<br>
31 Station Avenue<br>
Somerdale, New Jersey 08083

/Floyd J. Miller
_____
Floyd J. Miller
Assistant United States Attorney